Johnson, J.
The plaintiff" below, Frances Watt, brought this action under section 7 of the liquor law, so called. (2 S. & C. 1432.)
She alleges that her husband, Joseph Watt, was a physician, having an extensive practice, and from the profits of that practice was able to furnish her a comfortable means of support; that about April, 1865, he became and was in the habit of getting intoxicated, and so continued until his death in 1869, of which the defendant had notice; that during that period, and at sundry and divers times, the de *261 fendant sold him, in quantities of from one pint to a quart, intoxicating liquors, causing said Watt to become intoxicated and ah habitual drunkard; and by reason thereof ‘during said period, and resulting therefrom, to become incapable of attending to his usual business, and squandered his estate, and so deprived her of her means of support, to her damage, etc.
To this there was a general denial.
On the trial a bill of exceptions was taken, showing that evidence was given by the plaintiff tending to prove the allegations of the petition, and on the part of the defendant tending to show that some of the liquor which Watt drank, producing some of the intoxication during the period named, and which caused a part of the injury which the plaintiff had sustained in her means of support, was sold to Dr. Watt by other persons than the defendant.
The defendant also offered evidence tending to show that Watt was a practicing physician, and that on some of the occasions when he procured whisky from the defendant he represented that he wanted it for persons whom he named, and was attending for medical purposes, upon which representations the defendant furnished some of the whisky, and that some of the persons named were sick at the time, and were attended professionally by him.
The defendant asked the court to charge the jury that the defendant was only liable for damages to the plaintiff' occasioned by intoxication produced by the intoxicating liquors which the defendant himself had sold to said Dr. Watt, and that the defendant was not liable for any damages produced by the intoxication of said Dr. Watt, occasioned by intoxicating liquors sold to him during said period by other persons; which charge the court refused to give, except as qualified herein; to which refusal the defendant excepted.
The defendant also asked the court to charge the jury, that if Dr. Watt at any of the times when the plaintiff proved he had procured whisky from the defendant, represented to the defendant that he wanted the same for a *262 patient whom he was then attending, and for medical purposes ; in the absence of any other proof in such behalf, and touching such sales, the jury were not authorized to find that such procurement of whisky from the defendant was a sale by the defendant to said Ur. "Watt, which charge the court refused to give; to which refusal the defendant also excepted.
The qualification of the first charge asked for, as given, was as follows:
“ Should you find that the defendant sold intoxicating liquor to Joseph Watt in violation of law, within the time charged in the petition, and that the plaintiff sustained damages by reason of the intoxication of said Watt, caused thereby to her person, property, or means of support, the fact that other persons also sold liquor to said Watt, in violation of law, within that period, and which liquor may have contributed to increase the intoxication, and consequently to enhance the injury resulting to the plaintiff therefrom ; such facts, if they be shown to have existed, will not exonerate the defendant from the consequence of his wrongful acts; but, on the contrary, he will still be responsible for all the injury resulting to the plaintiff from the .intoxication of Joseph Watt, caused by his illegal sales of liquor to him. If you can separate the damages resulting from the intoxication caused by illegal sales to Watt, by defendant from the damages resulting from sales by others, you must do so; but, if such separation can not be made, you will render your verdict against the defendant for all the actual pecuniary damages resulting to the plaintiff in person, property, or means of support, by reason of the intoxication of said Joseph Watt, to which intoxication the illegal sales of intoxicating liquor by the defendant contributed.”
Upon the second point the court charged that, “ a sale to any other person, though the delivery was to an agent who was at the time intoxicated, or in the habit of becoming intoxicated, would not be a violation of law if the person to whom the sale was actually made was a sober person.
“ If it be shown by the evidence that the defendant sold *263 intoxicating liquor to Joseph. Watt, and said Watt was at the time intoxicated, or in the habit of becoming intoxicated, and the defendant had knowledge of such intoxication or habit, the fact that Watt was a physician, and that he at the time represented that such liquor was to be used by him for medicinal purposes, or in the exercise of his profession, would not be a justification of the defendant, nor would it excuse him from the consequence of his act. A sale, under such circumstances, would be a violation of law.
“ If you are satisfied by the evidence that the defendant sold intoxicating liquor upon representations made by Joseph Watt that such liquor was designed for another person, and to be used by such person medicinally; and that he delivered the same to said Watt upon such representation and received pay from him therefor; andthat said Watt was at the time intoxicated, or in the habit of becoming intoxicated, and the defendant then knew that said Watt was intoxicated, or in the habit of becoming intoxicated, such sale would be a violation of the law, unless, the evidence further satisfies you (the burden of proof as to this being on the defendant) that the liquor so sold was actually delivered by Watt to the person for whom he represented it to bo designed,. or that Watt had been authorized by such person to make the purchase for him.”
Under the authority of Adams v. The State, 25 Ohio St. 584, wo do not feel warranted in examining other parts of the charge of the court below, and therefore proceed to notice the points made by the refusal of the court to charge as requested, and by the charges given covering the same points.
The first proposition which the court refused to give, except with the qualification stated, was, that the defendant was only liable for the damages occasioned by the liquors which he had himself sold, and that he “ was not liable for any damages produced by the intoxication of said Dr. Watt, occasioned by intoxicating liquors sold to him during said period by other persons.”
*264 In the charge as given, the jury were properly instructed that, before they could find for the plaintiff, she must satisfy them by a preponderance of testimony that the defendant sold intoxicating liquor to the husband contrary to the act; that he became intoxicated with the liquor so sold; and that 'she was injured in her means of support in consequence of the intoxication so induced. This charge, which it is presumed preceded this request to charge, covers the same ground as this special charge asked.
It is a distinct assertion that the plaintiff’s right of recovery rested solely on the illegal acts of defendant, and grew out of the intoxication so induced by him.
It excluded the idea that the defendant could be made liable for damages resulting from the acts of others.
They were told that before a verdict could be rendered against the defendant, they must find that the plaintiff had been injured in her means of support in consequence of the intoxication of her husband, caused by Ms illegal sales.
Was it necessary to add, that for any damages produced by liquors sold by others he was not liable? We think not.
The court was careful to limit his liability to the consequences of his illegal acts, and the request upon this point was, in effect, to ask the court to repeat the same charge in different language.
The court, however,' did give the charge requested with the qualification stated.
That qualification was, in substance, that if during that period the plaintiff' had sustained damages by the illegal sales by the defendant, the fact that during the same period other persons by their illegal sales had contributed to increase the intoxication, and consequently enhance the damages to the plaintiff, that would not exonerate the defendant from the consequences of his illegal acts.
This proposition is apparently so self-evident in its nature that it hardly needs any argument to support it.
■ It is a well-settled principle, that where a person undertakes to do an unlawful act which will result in injury to another, and actually uses the means calculated to do such *265 act, the fact that third persons have also contributed to that result would not exonerate him from the consequences. To this part of the charge, standing alone, there seems to be no objection. It is only when coupled with that which follows, that is, if they could not separate the damages resulting from the intoxication caused by the defendant from those caused by others, then the defendant was liable for all the injury to plaintiffs means of support to which he contributed.
The charge of the court on the subject of damages was intended to meet three possible aspects of the evidence :
1. If the defendant was the sole cause of the intoxication, he was liable for all the damages resulting.
2. If some of the injury was caused by others, he was not liable for damages resulting from their illegal sales.
3. If the damages could not be separated, then he was liable for all injuries to which he had contributed by his illegal sales.
To this last charge the defendant objects. It is claimed to virtually mate him liable for intoxication caused by others.
The statute gives the action against any person who shall . . . have caused the intoxication.” This intoxication may be “ habitual or otherwise.” A right of action is given for damages resulting from single cases of intoxication or from habitual intoxication. ' Tinder the code several distinct causes of action may be joined in one action for damages growing out of distinct cases of intoxication, when each cause of action is separate and distinct and is between the same parties; but if on trial it appears that some of the acts of intoxication were caused by others, no recovery as to them could be had. In such case the causes of action are separate, and the damages resulting from each are distinct and disconnected, and the causes of action should be separately stated and numbered.
In such a case the question would be as to each case of intoxication, who caused it, and what damages resulted from it. What would constitute a causing of a single act *266 under the statute to render one liable would then arise. That question is not made in this case. The charge is of causing habitual intoxication for' a series of years. The damages alleged are not the proximate results from distinct cases, but the ultimate result of habitual intoxication. This continued habit of drinking is alleged to have rendered the husband incapable of attending to his business, and caused him. to squander his estate. This final result deprived the plaintiff of her means of support. It is a charge of repeated illegal .acts, producing by their united effects an ultimate state or condition of Ur. Watt, out of which the damages arise.
The plaintiff' asks to recover the damages resulting from this state or condition of her husband, caused by repeated illegal sales for a series of years, and not the damages from, a single case of intoxication, nor of a series of distinct cases at different times, caused by separate and distinct illegal sales.
The means used were sales in quantity by the pint and quart. To a person of Ur. Watt’s habits frequent sales in such quantity were calculated of themselves to produce the result complained of.
Every man is presumed to have intended the natural and probable consequences of his acts. The defendant was, in violation of law, using means calculated to produce the alleged injury. If the jury found that this was so, and that the means so employed were so continued as to produce the condition of the husband alleged, then they had the right to presume he intended the result which followed, though others, with or without preconcert, contributed to cause it.
The intent with which the act or acts are done is always an important element in the case. In this case it is peculiarly so. The means used, the force or agency employed, are to be considered in ascertaining that intent.
If, as seems to be claimed, a defendant can only be liable, except in cases of conspiracy or agreement, when he is not the sole cause of the habitual intoxication, and no recovery can be had unless the damages can be separated (an impos *267 sibility in most eases of this class), then this part of the statute is virtually a dead letter.
Why should a defendant be exonerated from the injury he has caused by his habitual wrongs for a series of years by showing that others, without his knowledge, have also contributed by like means to this result? ' lie was using adequate means to produce the result, and may therefore fairly be presumed to have intended it. True, he may not have enjoyed a monopoly in the profits accruing, by reason of the competition of others in a common business, but that certainly is no reason why he should not be liable for the injuries he was intentionally engaged in causing. If such is the law, then he could take advantage of his own wrong by showing that during this four years another or others had also contributed.
Such is not the law in criminal cases at common law, as will be shown hereafter; and we know no reason for greater strictness under this statute than in cases of the highest crimes known to the law. This section of the statute, we take it, is to be construed by ordinary canons of construction.
All joint tort feasors are jointly or severally liable at the election of the plaintiff. 1 Chitty’s Plead. 86; 6 Taunton, 29; 1 Wash. 187.
Counsel properly admit that where two or more act by concert in an unlawful design, each is liable for all damages, but claim if each acts independently or without the knowledge of the other, then he is only liable for his own acts. In the former case, the acts of others co-operating are his acts, because they are only in furtherance of a common unlawful design.
If there is no common intent, there can be no joint liability, but each is responsible for his own act. If there is a common intent, or if one without such intent aids one with it, in doing an unlawful act, the latter is nevertheless guilty, though not the sole cause. They claim this principle is limited to cases of conspiracy or concerted action.
In this we think they mistake the authorities. We hold *268 that this common intent, which is sufficient to create mutual liability, may exist without previous agreement or a common understanding to do an unlawful act, and that it may be presumed to exist, when the means employed creates that presumption, as well as by proving an express agree ment.
'Wharton, in his recent work on negligence, under the head of “ causal connections,” section 144, says : “ The fact that another person contributed either before the defendant’s interposition, or concurrently with such interposition in producing the damage, is no defense.”
. So, if two trains of cars collide by mutual negligence of those operating them, they are jointly or severally liable. Colegrove v. N. Y. & N. H. R. R., 20 N. Y. 492.
To constitute parties co-wrong-doers, it is not necessary to show they acted by pre-concert, if they were intending to do the same injury, and were acting simultaneously in its accomplishment. In such case they are jointly and severally liable.
This precise question was considered in Stone v. Dickinson, 5 Allen, 29. Nine different creditors wrongfully sued out writs against their debtor; placed them in the hands of the same officer, who arrested the debtor on all the writs at the same time; each creditor being ignorant of what the other was doing; it was held they were jointly or severally liable, though there was no pre-concerted action.
Bigelow, C. J., says : “ As a matter of first impression, it would seem . . they could not be regarded as co-trespassers in the absence of proof of an intention to act together, or of knowledge that they were engaged in a common enterprise.
“ But a careful consideration of the nature of the action and of the wrong done . . will disclose the fallacy of this view of the ease.
“ The wrong which constitutes the gist of the action is that he has been unlawfully arrested. . . It is only one wrong. The error consists in supposing that the several parties . . can not be regarded as cortrespassers, because *269 it does not appear that they acted in concert, or knowingly employed a common agent. Such pre-concert or knowledge is not essential to the commission of a joint trespass.

“It is the fact that they all united in the wrongful act, or set on foot or put in motion the agency by which it was committed that renders them, jointly liable to the person injured.”

“ The fault of a mere stranger, however much it may contribute to the injury, is no defense for one whose negligence helped to bring the accident about.” Sheannan & Eedf. on Negligence, sections 27 and 46, and cases cited.
“ Persons who co-operate in an act directly causing injury are jointly liable for its consequences, if they act in concert, or unite in causing a single injury, even though acting independently of each other.” Ib. section 58.
The same principle obtains in criminal law: “If a party be engaged in an unlawful act, and another assists him, and actually perpetrates the mischief, the first party shall be held responsible as though he had been sole perpetrator. • . Upon the same principle it is that he is responsible to the same extent, though the fatal blow be struck by another without any concert on his part.” Buts v. The State, Meigs (Tenn.), 108; 1 Bishop Crim. Law, sec. 642.
In such cases, the party charged is held liable for causing the injury, though not the sole cause.
If the defendant was using the means calculated to produce the injury, the law presumes he intended to produce it. If others, with or without concert, were concurrently co-operating with him, using like means, they were acting with the same common design, and if the injury resulted, each is liable, though each was acting without the knowledge of what the other was doing. So if the defendant alone was using such means as created this presumption of intent to do the act, and another, without concert, free from such intent, was contributing to the injury, the former is liable for all damages, notwithstanding the other also contributed.
If the defendant’s illegal sales were, under the circumstances, sufficient in quantity and frequency to cause *270 habitual drunkenness, he is engaged in an unlawful act, and liable for the consequences, though others, without pre-concert, united in causing it. Such is the uniform rule in this class of cases.
This principle of law is so strongly supported by both reason and authority that it will hardly be questioned. Nor is it in conflict with numerous authorities in cases'of trespassing animals belonging to different owners. Separate owners are not at common law jointly liable for injuries jointly committed by their respective animals, though all happen as parts of a single transaction. In such cases each owner is liable only for the injuries committed by his own animal, because of his negligence in permitting it to run at large. This neglect is the ground of the owner’s liability. As the animals are supposed to be under the separate control of each owner, and his negligence is distinct from that of the other and not in furtherance of a common object, they can not be jointly liable, because the wrongful "neglect of each is wholly independent, and the damages are not the direct result of the act. There i.s no concurring agency of the owners in the trespass.
If, however, the separate owners of such animals keep them in common and suffer them to run at large as one herd or body, then they are jointly liable, for all damages, by the united trespasses of all or any of the animals. Jack v. Hudnall, 25 Ohio St. 255.
The fact that the amendment to this section by the Adair law, uses the words, “ in whole or in part,” is referred to as evidence that the original section was limited to intoxication “ caused in whole.” To this we answer: 1st. As already shown and admitted by counsel, joint wrongdoers were liable for each other; 2d. This clause of the Adair law was doubtless inserted to put at rest an open question, one about which there was much difficulty and difference of opinion in different parts of the state.
2. It is claimed the court erred in refusing to charge : That if Dr. Watt, at any time when he procured whisky from the defendant, represented that he wanted it for a pa *271 tient he was attending, and for medicinal purposes, the jury were not authorized to find such procurement was a sale, in the absence of any other proof touching such sale.
We think there was no error in refusing this charge. If the plaintiff offered evidence tending to show a sale, which to Dr. Watt was illegal prima, facie, the burden of showing it was not rested on the defendant, and this was not shown by the mere declaration of the purchaser. The jury were told that a sale to any other person, though a delivery to an agent who was intoxicated or in the habit of becoming so, would .not be illegal if the person for whom the agent was acting was a sober man. Had the defendant shown that the whisky so procured was a sale to the doctor’s patients, he acting as their agent, he would come within this charge. His declaration that it was for his patients, even if true, did not constitute a sale to the patient, any more than his purchase of drugs to be used in his practice is necessarily a sale to his patients.

Judgment affirmed.

Scott, Chief Judge, Day and Wright, JJ., concurred.